UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| DARRELL ADKINS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7: 05-237-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | **MEMORANDUM OPINION** |
| Social Security[1], | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*     \*\*\*     \*\*\*     \*\*\*

This matter is pending for consideration of the motion for attorneys' fees filed by Plaintiff's counsel, William Roberts. [Record No. 16]    Through this motion, Roberts seeks payment of $20,197.50 in fees and $910.00 in expenses.  The Commissioner has objected to the fee request, arguing that the hourly rate and number hours requested are excessive.  In addition, the Commissioner contends that the Court should not grant the expense request.  After reviewing the motion and supporting documentation, the Court agrees with the Commissioner that the fee request is excessive in a number of areas.  Further, the Plaintiff has not provided sufficient information to justify reimbursement of expenses of $910.00.  Therefore, the motion will be granted, in part, and denied, in part, as outlined below.

---

[1]  The Court takes judicial notice of the fact that, on February 12, 2007, Michael J. Astrue became the Commissioner of Social Security.  Accordingly, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he will be substituted for the prior, acting Commissioner.

-1-

## I.      BACKGROUND

On July 29, 2005, the Plaintiff filed a Complaint seeking review of the Commissioner's decision denying his claims for Disability Insurance Benefits and Supplemental Security Income. On September 2, 2005, the Plaintiff moved the Court to remand this action back to the Appeals Council for consideration of new medical evidence. Prior to responding to the Plaintiff's Complaint, the Commissioner also sought remand, albeit for different reasons than stated by the Plaintiff. Specifically, the Commissioner moved the Court to remand pursuant to sentence six of 42 U.S.C. § 405, claiming that "good cause" existed for further administrative proceedings. The Commissioner asserted that remand was necessary in order to reconstruct the administrative record regarding the Plaintiff's claims.

On October 4, 2005, the Court remanded the action to allow for further administrative proceedings pursuant to sentence six of 42 U.S.C. § 405(g). The Court directed that the Commissioner consider the medical report of Dr. Fannin and construct the administrative record. The Plaintiff filed a supplemental motion to remand on October 5, 2005. After noting that it had previously granted the parties' motions to remand, the Court denied the supplemental motion as moot.

The Appeals Council remanded the action back to the Office of Hearings and Appeals for further proceedings. On January 11, 2007, the Plaintiff notified the Court that the ALJ had issued a decision, finding that the Plaintiff had been disabled since August 22, 2002. The parties requested that this Court issue a final judgment affirming the administrative decision. On

January 23, 2007, the Court entered judgment in favor of the Plaintiff.  The request for fees and expenses is ripe for review.

## II.    DISCUSSION

The Equal Access to Justice Act ("EAJA") "departs from the general rule that each party to a lawsuit pays his or her own legal fees." *Howard v. Barnhart*, 376 F.3d 551 (6th Cir. 2004) (citing *Scarborough v. Principi*, 541 U.S. 401 (2004)).  The Act requires the payment of fees and expenses to the prevailing party in an action against the United States, unless the position of the United States was substantially justified.  28 U.S.C. § 2412(d)(1)(A).  In particular, the Act provides, in relevant part, that:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).  Roberts has requested a fee award pursuant to this section of the Act.

Although the Commissioner concedes that attorneys' fees should be awarded under the EAJA, he objects to the amount of fees requested by Roberts as being duplicative and excessive. Specifically, the Commissioner contends that Roberts' hourly rate of $150.00 is excessive and that in requesting compensation for 136.48 hours,[2] Roberts is seeking compensation for

---

[2]  With one exception, Roberts' fee records reflect that he bills in quarter hour increments.  However, his January 11, 2007, entry for preparation and filing of his EAJA fee petition reflect 3.98 hours expended. Although curious, the Court will not require further explanation of this time entry.

duplicative entries, the performance of unnecessary tasks, excessive amounts of time for tasks and clerical tasks.

### A.     Hourly Rate

With respect to establishing reasonable attorneys' fees, the EAJA provides that:

> The amount of fees awarded under [28 U.S.C. § 2412(d)] shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A).  The EAJA establishes a ceiling for attorneys' fees of $125 per hour, which may be adjusted for cost of living increases or a "special factor."  *See e.g., Chipman v. Sec'y of Health and Human Servs.*, 781 F.2d 545 (6th Cir. 1986) (noting that the statutory ceiling under the EAJA was $75 per hour).[3]

In determining the appropriate hourly rate to be used in calculating attorneys' fees under the EAJA, the Court must initially determine the prevailing market rate for the kind and quality of services furnished.  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  If the prevailing market rate is greater than the statutory ceiling ($125 per hour), then Court must determine whether it should adjust the hourly rate upward from the ceiling to take into account an increase the cost of living or a special factor.  *See e.g., Meyer v. Sullivan*, 958 F.2d 1029 (11th Cir. 1992).

The prevailing market rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465

---

[3]  In 1996, Section 2412(d)(2)(A) was amended to provide that statutory cap on attorneys' fees under the EAJA is $125 per hour.  *See e.g., Caremore, Inc. v. N.L.R.B.*, 150 F.3d 628 (6th Cir. 1998).

U.S. 886, 895-96 n.11 (1984). In determining the market rate, courts are required to examine standard fees in the relevant community. *Id*. at 895; *see also Hudson v. Reno*, 130 F.3d 1193, 1208 (6th Cir. 1997). The fee applicant bears the burden of producing evidence that the requested rate is in line with those prevailing in the community for similar services by attorneys of reasonably comparable skill, experience and reputation. *See Blum*, 465 U.S. at 895-96.

In *Chipman*, the Sixth Circuit upheld a district court decision rejecting the plaintiff's request for attorney's fees of $100 per hour and awarding fees of $75 per hour in a social security case. Although the court did not hold that awards in excess of $75 per hour were improper, it concluded that "the district court [did not] abuse its discretion in determining that the fees awarded should not exceed $75 per hour even though the cost of living may have indeed risen since the enactment of the EAJA." *Chipman*, 781 F.2d at 547.

In addition to the undersigned, other judges of this Court have examined the prevailing market rate for attorneys involved in Social Security litigation in the Pikeville area. In *Back v. Commissioner of Soc. Sec.*, No. 7:04-2-DLB (E.D. Ky. May 18, 2005), this Court (Judge David Bunning presiding) determined that a $100 per hour fee award was customarily utilized in the Southern Division at Pikeville for social security cases. Although the Court acknowledged that "[p]erhaps . . . an adjustment to the historical $100 per hour rate is warranted," it noted that "[p]laintiff's counsel did not provide evidence that the prevailing market rates have now increased." Thus, the Court found no basis for "deviating from the $100 historical figure." Similarly, in *McCoy v. Commissioner of Soc. Sec.*, No. 7:04-363-GWU (E.D. Ky. Nov. 8, 2006), this Court (Judge G. Wix Unthank presiding) awarded fees of $100 per hour for a social security

case in the Southern Division at Pikeville.  And in *Pridemore v. Commissioner of Soc. Sec.*, No. 7:05-240-DLB (E.D. Ky. May 22, 2006), this Court (Judge David Bunning presiding) rejected Plaintiff's counsel request for attorney's fees of $130 per hour and awarded fees of $100 per hour.  In doing so, the Court noted that $100 per hour reflects the relevant market rate for fee awards in social security cases filed in Pikeville.[4]

Roberts asserts that his fees should be calculated at an hourly rate of $150 per hour.[5] However, he has failed to offer any evidence of the prevailing market rate for attorney's fees in social security cases in the Southern Division at Pikeville and has failed to present any evidence demonstrating that his requested hourly rate is reasonable and within the normal range for attorneys with comparable skill, experience and reputation practicing in the area.  Although Roberts has submitted a number of documents which he claims demonstrates that the prevailing rate in black lung cases is $250 per hour, these materials are not relevant with respect to determining the reasonable hourly rate for social security cases.  And while Roberts suggests that this information is relevant inasmuch as both black lung and social security litigation takes place

---

[4]  The undersigned has awarded fees at the rate of $100 per hour as the prevailing market rate in the Pikeville, Kentucky area on several occasions.  *See Cobb v. Commissioner*, U.S. Dist. Ct., E.D. Ky., Pikeville No. 02-102 (October 11, 2002); *Thacker v. Commissioner*, U.S. Dist. Ct., E.D. Ky., Pikeville No. 02-121 (November 14, 2002); *Keel v. Commissioner*, U.S. Dist. Ct., E.D. Ky., Pikeville No. 02-232 (August 25, 2005); *Townsend v. Commissioner*, U.S. Dist. Ct., E.D. Ky., Pikeville No. 02-306 (October 22, 2003); *Daniels v. Commissioner*, U.S. Dist. Ct., E.D. Ky., Pikeville No. 02-457 (August 25, 2003); *Pack v. Commissioner*, U.S. Dist. Cit., E.D. Ky., Pikeville No. 02-481 (July 17, 2002); *Collier v. Commissioner*, U.S. Dist. Ct. E.D. Ky., Pikeville No. 03-11 (August 25, 2003).  In these cases, the fees originally sought ranged from $1,937 to $7,425.  Thus, the current request greatly exceeds what is normally requested in similar matters.

[5]  In his initial motion, Counsel requested an hourly rate of $150 per hour.  However, in the reply memorandum, Counsel states that "[he] and the Claimant both feel that $125 per hour for representation in a social security claim is reasonable for his services." [Record No. 24, p. 4]  Nevertheless, Counsel has failed to offer any evidence demonstrating that either of these hourly rates are reasonable and within the normal range for attorneys with comparable skill, experience and reputation practicing in the Pikeville area.

in federal court, the Court rejects this argument.  The mere fact that both types of cases are practiced in federal court does not demonstrate that the prevailing market rate for these cases is the same.

Based on the decisions from this Court, it is apparent that the customary fee awarded in social security cases in the Souther Division at Pikeville is $100 per hour.  Inasmuch as Roberts has failed to offer any evidence establishing that the prevailing rate charged for comparable work in the community of the Pikeville division exceeds $100 per hour, the Court can discern no reason to depart from this hourly rate.

### B.    Number of Hours

Roberts alleges that he expended 136.48 hours between July 2005 and January 2007 representing the Plaintiff.  In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court directed district courts to exclude from the initial fee calculation "hours that were not 'reasonably expended.'"  *Id*. at 434.  The Court further stated that attorneys are required to exercise "billing judgment."  *Id*.  Thus, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  *Id*.  "Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."  *Id*. (citing *Copeland v. Marshall*, 641 F.2d 880 (D.C. Cir. 1980).

To determine whether the number of hours claimed by Roberts were reasonably expended, the Court directed him to file copies of time sheets and/or billing statements covering the relevant dates in question.  In particular, the Court noted that this material should reflect the

-7-

amount of time and expenses attributed to the Plaintiff and other clients on the dates in question. Roberts failed to provide such information. Instead, he simply submitted a client-specific billing statement and an illegible copy of some hand-written that were apparently written on the inside of Mr. Adkins' file. The materials submitted by Roberts are wholly inadequate and do not demonstrate that the amount of fees requested were incurred and/or justified.[6]

Despite Roberts' dramatic failure of proof, the Court has conducted an independent review of the materials submitted by counsel, the affidavit of the Plaintiff and the record in general. Based upon this review, the Court concludes that Roberts is not entitled to the full number of hours claimed because a significant portion of this time was "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Although counsel requests compensation for 136.48 hours, the Court will award fees for 81.25 hours of work.[7] In reviewing the materials

---

[6] By Order dated February 6, 2007, Plaintiff's counsel was given the following instructions:

> 2. Due to the issues raised in the Defendant's response, Plaintiff's counsel is directed to file with his reply copies of time sheets and/or billing statements covering the relevant dates in question. This material should reflect the amount of time and expenses attributed to the Plaintiff and other clients on the dates in question. If counsel believes that such material contains privileged or confidential information, he may file the time sheets and/or billing statements under seal for the Court's review. Otherwise, counsel may redact the identity of clients and assign numbers or other identifying prefixes for use in connection with the pending motion.

[Record No. 23]

In response to this directive, it appears that Roberts simply submitted the inside folder of the file relating to the present case. The specific information submitted can best be described as unprofessional gibberish. [See Record No. 24., pp. 14-16.] This is a far cry from what the Court expected and provides no meaningful opportunity to examine the hours billed to this matter as compared with the other cases being handled by Roberts during the same time period. An attorney who claims to consult with "approximately thirty to forty clients per day, has practiced law approximately twenty-six (26) years and has worked in his law practice approximately seven days per week since as long as he can remember" [Record No. 24, p. 4] is expected to keep appropriate time records.

[7] In light of fees awarded in similar cases, the Court finds the total sum to be more than generous.

-8-

submitted by Roberts, the Court notes that some overall themes exist, which will be discussed below.

### 1.      Duplicative Tasks

Roberts has billed an excessive number of hours for duplicative tasks.  There are numerous instances where he has requested compensation to draft or review the same document or letter on more than one occasion.  For example, on September 22, 2005, counsel indicates that he met with Adkins for .50 hours to discuss the Commissioner's motion for extension of time.  However, five days later (September 27, 2005), he billed .25 hours for drafting a letter asking Adkins to come by the office to discuss the same motion.  On September 30, 2005, Roberts billed Adkins for both a consultation and a telephone conversation (.25 for each task).  The time entries reflect that, in both instances, Roberts discussed the status of Adkins' claim.  On October 6, 2005, Roberts indicates that spent .25 hours reviewing this Court's remand order.  However, he billed another .25 hours on October 10, 2005, for reviewing the same order.  Additionally, on November 28, 2005, the time sheet reflects that Roberts billed Adkins .25 hours for a telephone conversation discussing the status of his claim.  The following day, on November 29, 2005, he again billed Adkins .25 hours for drafting a letter asking him to come by the office to discuss the status of his claim.  On December 19, 2005, Roberts indicates that he met with Adkins for 1.00 hour to discuss the status of his claim, medical evidence, and correspondence from the SSA.  And, on December 20, 2005, one day later, he billed .25 hours for drafting a letter asking his client to come in for another consultation to discuss the same matters.  On March 1, 2006, Roberts' records reflect that he billed a total of .75 hours for writing two separate letters to ALJ

Gitlow.  Although the time entries indicate that he discussed different matters in each of these letters, he should have been able to include both topics in one letter and avoid duplication of effort.  Likewise, on September 19 and 20, 2006, Roberts billed a total of 1.00 hour for calling the agency to request the status of Adkins' claim.  Because each of these entries are duplicative, the Court will reduce the total amount billed of 5.25 hours to 3 hours.

Roberts has also duplicated his efforts in writing numerous letters to Adkins. Specifically, the Court notes that Roberts has billed 12.75 hours[8] for drafting numerous letters simply requesting that he call the office to set up appointments.[9]

---

[8] For the ease of calculation, the client letters dated September 27, 2005, November 29, 2005 and December 20, 2005 have been excluded from this total.  The Court has previously reduced the amount billed by counsel for these letters in the prior section inasmuch as they were duplicative of other tasks.

[9]

| 7/19/05 | Letter to client to come by to discuss and review status of claim and filing of claim in Federal District Court | .25 hours |
|---|---|---|
| 7/26/05 | Letter to client to come by to discuss and review status of claim and filing of claim in Federal District Court | .25 hours |
| 8/14/05 | Letter to client to come by to discuss and review status of claim | .25 hours |
| 8/22/05 | Letter to client to come by to discuss and review medical report of Dr. Fannin and possibility of filing Motion for Remand | .25 hours |
| 9/6/05 | Letter to client to come by to discuss and review medical report of Dr. Fannin | .25 hours |
| 9/9/05 | Letter to client to come by to discuss and review Motion to Remand filed in Federal District Court enclosing medical report of Dr. Fannin | .25 hours |
| 10/3/05 | Letter to client to come by to discuss and review status of claim, medical and Order issued on 9/27/05 | .25 hours |
| 10/7/05 | Letter to client to come by to discuss and review status of claim and letter received from Deborah Hibbard | .25 hours |

-10-

| | | |
|---|---|---|
| 10/11/05 | Letter to client to come by to discuss and review Order dated 10/6/05 received from Federal Judge Reeves | .25 hours |
| 10/12/05 | Letter to client to come by to discuss and review status of claim and to fill out forms received from the Social Security Administration | .25 hours |
| 10/12/05 | Letter to client to come by to discuss and review the Commissioner's Motion for Remand | .25 hours |
| 10/13/05 | Letter to client to come by to discuss and review letter received from the Cabinet for Health and Human Services | .25 hours |
| 10/21/05 | Letter to client to come by to discuss and review Notice of Appeals Council action | .25 hours |
| 11/4/05 | Letter to client to come by to discuss and review status of claim and to rush up claim | .25 hours |
| 11/21/05 | Letter to client to come by to discuss and review status of claim and to rush up claim | .25 hours |
| 11/23/05 | Letter to client to come by to discuss and review transmittal received from the Office of Hearings and Appeals dated 11/17/05 regarding confusion of not receiving Remand Order from the Federal District Court with follow-up | .25 hours |
| 12/7/05 | Letter to client com come by to discuss and review status of claim and to update all medical | .25 hours |
| 12/13/05 | Letter to client to come by to discuss and review medical and to rush up claim, possibility of having claims consolidated | .25 hours |
| 12/16/05 | Letter to client to come by to discuss and review letter received from Judge Gitlow dated 12/9/05 | .25 hours |
| 12/27/05 | Letter to client to come by to discuss and review letter received from Judge Gitlow and the possibility of filing objection to additional medical evaluation, that Claimant has been sent to a number of prior examinations | .25 hours |
| 12/29/05 | Letter to client to come by to discuss and review status of claim and to fill out forms received from the Division of Disability Determinations | .25 hours |
| 1/4/06 | Letter to client to come by to discuss and review status of claim and to fill out forms received from the Division of | .25 hours |

Disability Determinations

| | | |
|---|---|---|
| 1/4/06 | Letter to client to come by to discuss and review status of claim and to fill out forms received from the Division of Disability Determinations | .25 hours |
| 2/23/06 | Letter to client to come by to discuss and review status of claim and medical | .25 hours |
| 3/7/06 | Letter to client to come by to discuss and review status of claim | .25 hours |
| 3/17/06 3/20/06 | Letter to client to come by to discuss and review status of claim and to update medical | .50 hours |
| 3/22/06 | Letter to client to come by to discuss and review status of claim and medical received from the Office of Hearings and Appeals in Huntington | .25 hours |
| 3/27/06 | Letter to client to come by to discuss and review office and treatment notes received from Mountain Comprehensive Care Center and Dr. Matthews | .75 hours |
| 5/10/06 | Letter to client to come by to discuss and review status of claim and to discuss and review all medical records, and to update all medical | .25 hours |
| 6/5/06 | Letters to client to come by to discuss and review status of claim and advising client that he needs to see an orthopedic specialist due to disagreement with Dr. Askin's report. Advising client that he may need to be examined by an orthopedic surgeon and have physician review MRI's and CT scans | .50 hours |
| 6/14/06 | Letter to client to come by to discuss and review status of claim and advising that we need to schedule him for an examination with Dr. Rapier and have Dr. Rapier review medical, MRI's and CT scan | .25 hours |
| 6/15/06 | Letter to client advising of appointment to be made with Dr. Rapier.  Advising client to call office for appointment regarding date and time to schedule examination.  Client is scheduled to see Dr. Fannin on June 19, 2006 for follow-up visit | .25 hours |
| 7/10/06 | Letter to client to come by to discuss and prepare for hearing scheduled for July 31, 2006 at 1:00 p.m. | .25 hours |

Roberts' time sheet reflects that he sent a letter to Adkins requesting that he call for an appointment after receiving virtually every piece of correspondence from the Court, various agencies and treating and examining physicians.  In a fifteen month period, Roberts wrote approximately 40 letters to his client simply to request a consultation with him.

On a number of occasions, Roberts billed for writing two or more letters in the same week requesting that Adkins come to the office to discuss the same matter.  For example, on July 24, 2006, Roberts wrote two separate letters to Adkins requesting that he come by the office to discuss and prepare for an upcoming hearing. Then, on July 26, 2006, he billed Adkins for an additional .25 hours for drafting another letter again requesting that he come by the office to prepare for the upcoming hearing.  It is likely that Adkins had not even received Roberts' first letter and had not had an opportunity to call for an appointment at the time Roberts wrote the

| 7/24/06 | Letter to client to come by to discuss and prepare for hearing scheduled for July 31, 2006 | .25 hours |
|---------|---------|---------|
| 7/24/06 | Letter to client to come by office immediately to discuss and prepare for hearing and update of medical | .25 hours |
| 7/26/06 | Letter to client to come by to discuss and review medical  report received from Dr. Fannin to prepare for hearing | .25 hours |
| 7/28/06 | Letter to client to come by to discuss and review R.F.C. received from Dr. Fannin and Dr. Rapier | .50 hours |
| 8/2/06 | Letter to client advising that Judge Gitlow gave an onset date of 8/28/02 and to come by office to discuss and review status of claim and onset date of disability | .25 hours |
| 8/3/06 | Letter to client to come by office within 40-60 days if not in receipt of any documents from the Social Security Admin. | .25 hours |
| 8/23/06 | Letter to client to come by to discuss and review status of claim and to try to rush up claim with review of correspondence | 1.50 hours |
| 10/26/06 | Letter to client to come by to discuss and review status of claim | .25 hours |

second letter only two days later.  Despite this fact, on July 28, 2006, Roberts billed yet another .25 hours for drafting a third letter to Adkins directing him to come by the office to review medical reports from Dr. Fannin and Dr. Rapier.  Knowing that he had already written Adkins two previous letters in the same week asking him to call the office for an appointment, it was unnecessary to bill an additional .25 hours to write a third letter simply because he had ascertained an additional matter to discuss at the consultation.  Roberts could have simply waited until the meeting to discuss all relevant matters.

Similarly, on January 4, 2006, Roberts billed Adkins twice for drafting substantially the same letter.  In both letters, he asked Adkins to come by the office to "review [the] status of [his] claim [and] to fill out forms received from the Division of Disability Determinations."  [Record No. 16, p. 13]

Notably, Roberts has claimed a total of 12.75 hours for drafting approximately 40 letters. Most of these letters were only one or two sentences, contained boilerplate language and certainly would not have taken fifteen minutes to draft.  Further, the Court notes that most reasonable attorneys would not have billed for drafting a letter but would simply have had their administrative staff call the client to set up a consultation.[10]  While the Court will not preclude Roberts for receiving compensation for these letters, it will reduce the amount billed by one-half inasmuch as Roberts has claimed an excessive number of hours for a task that is administrative in nature.  Therefore, the Court will reduce the 12.75 hours billed to 6 hours.

---

[10]  The Court notes that the vast majority of copies of correspondence submitted by Roberts are not signed by him.  However, several have electronic signatures added and at least one bears his signature but is initialed by his secretary.  Thus, the Court is left to wonder whether these letters were letters from Roberts or merely items prepared solely by his administrative staff.

## 2.    Clerical Tasks

The Court notes that Roberts has billed 6.25 hours for tasks that are clerical in nature and are not compensable as attorneys' fees.  Attorney time that is purely clerical in nature should not be billed.  *See e.g., Knudsen v. Barnhart*, 360 F. Supp. 2d 963 (N.D. Iowa 2004).  Rather, tasks that are clerical in nature are considered overhead costs.  *Id.* at 977.  "Work which could have been done by support staff is excluded from an award under the EAJA.  Purely clerical or secretarial tasks should not be billed at a lawyer or paralegal rate, regardless of who performs them."  *Johnson v. Barnhart*, 2004 WL 213183 *3 (W.D. Mo. 2004) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974)).  In *Johnson*, the Fifth Circuit stated that:

> [i]t is appropriate to distinguish between legal work, in the strict sense, and . . . clerical work . . . and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate.  Its dollar value is not enhanced just because a lawyer does it.

*Johnson*, 488 F.2d at 717.  While the EAJA allows for paralegal fees to be included in a fee award, "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989); *see also Weaver v. Clarke*, 933 F. Supp. 831, 837 (D. Neb. 1996), *aff'd*, 120 F.3d 852 (8th Cir. 1997), *cert. denied*, 522 U.S. 1098 (1998); *see also Surge v. Massanari*, 155 F. Supp.2d 1301, 1305 (M.D. Ala. 2001) ("[T]his court disapproves of the billing at a professional hourly rate for services reasonably performed by support staff, whose salaries are included in the lawyer's office overhead.")

-15-

In the instant case, Roberts has billed for administrative tasks, such as filing and faxing documents, which do not require the skill of an attorney.  After reviewing Roberts' itemized accounting it appears that the following entries relate solely to clerical/secretarial tasks and will therefore be excluded:

| | | |
|---|---|---|
| 11/3/05 | Letter faxed to Appeals Council regarding telephone conversation with their office regarding confusion of Appeals Council action, whether concerning order of Remand dated 10/4/05 with follow-up | 2.25 hours |
| 11/23/05 | Letter faxed to attorney, Mr. Palpell in Atlanta, GA regarding report of Dr. Fannin and asking to rush up claim with follow-up memo | .75 hours |
| 1/3/06 | Fax transmission from Dr. Fannin's office | .75 hours |
| 6/29/06 | Receipt of ALJ Gitlow's letter requesting that client's attorney submit Interrogatories and regarding subpoena commanding Dr. Askin to attend hearing | .25 hours |
| 7/24/06 | Faxed letter to Dr. Fannin's office requesting updated medical report (new report) | .25 hours |
| 7/26/06 | Fax of Dr. Fannin's report | 1.00 hour |
| 7/31/06 | Fax transmission from Dr. Rapier's office | 1.00 hour |

### 3.    Multiple Tasks

The Court further notes that Roberts has lumped together multiple tasks-both clerical and non-clerical in one time entry.  As such, the Court can neither assess the reasonableness of time spent for each of these billed activities, nor can it discern the hours spent on each clerical versus non-clerical task.  In *United Slate, Tile and Composition Roofers, Damp and Waterproof Workers Ass'n v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495 (6th Cir. 1984), the Sixth

Circuit noted that "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation." *Id*. at 502 n.2.

Here, Roberts has lumped together multiple tasks throughout his time entries. In doing so, he has used several broad categories which include the following: (1) receiving, reviewing and filing; (2) receiving and reviewing / faxing and reviewing; and (3) preparing and filing. The Court will discuss each of these categories below.

### a.        Receiving, Reviewing and Filing

Roberts has claimed time ranging from .25 hours to 1.00 hour for "receiv[ing], review[ing] and fil[ing]" various documents.[11]  In total, Roberts has billed 7.75 hours for the

---

| [11] | 9/6/05 | Received, reviewed and filed medical report of Dr. Fannin | .25 hours |
|---|---|---|---|
| | 9/22/05 | Received, reviewed and filed Notice of Appearance filed by the Assistant U.S. Attorney John S. Osborne, regarding claim pending in Federal District Court dated 9/20/05 | .25 hours |
| | 9/29/05 | Received, reviewed and filed Order dated ./27/05 from Hon. Danny Reeves, U.S. District Judge, granting the Defendant's Motion for Extension of Time to Respond to Claimant's Motion for Remand | .25 hours |
| | 10/5/05 | Received, reviewed and filed the Commissioner's Motion to Remand dated 10/3/05 | .25 hours |
| | 10/7/05 | Received, reviewed and filed consultative examination performed by Dr. Edwards dated 8/21/05 from DDS with letter dated 10/5/05 | 1.00 hour |
| | 10/12/05 | Received, reviewed and filed forms from the local Social Security Administration | .25 hours |
| | 10/13/05 | Received, reviewed and filed letter from the Cabinet for Health and Human Services | .25 hours |

"receiv[ing], review[ing] and fil[ing]" of documents.  While reviewing a document warrants

billable time, receiving and filing documents are clerical tasks which are not compensable under

| 10/21/05 | Received, reviewed and filed Notice of Appeals Council action | .25 hours |
| 12/11/05 | Received, reviewed and filed letter from Judge Gitlow dated 12/9/05 asking to review claim and medial records with follow-up | .50 hours |
| 12/22/05 | Received, reviewed and filed letter from Judge Gitlow dated 12/20/05 regarding additional consultative evaluation to be scheduled of claimant | .25 hours |
| 12/23/05 | Received, reviewed and filed correspondence from Tom Sparks, Disability Examiner, dated 12/21/05 regarding status of claim and medical on second application with follow-up | .75 hours |
| 2/16/06 | Received, reviewed and filed letter from Judge Gitlow advising of his intent to forward Exhibit List for review and prepare interrogatories to medical expert, Board Certified Orthopedic Surgeon.  Judge Gitlow advising that he would forward information within ten to fourteen days.  Advising of problems in obtaining interrogatories | 1.00 hour |
| 3/16/06 | Received, reviewed and faxed Notice of Denial dated 3/11/06 and 3/14/06 regarding Claimant's Request for Reconsideration | .50 hours |
| 6/11/06 | Received, reviewed and filed letter from Judge Gitlow advising he was in receipt of my letter dated 6/7/06 that request for hearing had been assigned to him and that he was requesting additional information with follow-up | .50 hours |
| 7/12/06 | Received, reviewed and filed Notice of Hearing scheduled for July 31, 2006 at 1:00 p.m, Exhibit List, Notice of VE with completion of HA-504 | .75 hours |
| 10/20/06 | Received, reviewed and filed Notice of Fully Favorable Decision dated 10/17/06 | .25 hours |
| 10/20/06 | Received, reviewed and filed letter from the local Social Security Administration dated 10/18/06 scheduling client for an appointment on October 25, 2006 | .25 hours |
| 11/19/06 | Received, reviewed and filed letter from the Social Security Administration in Falls Church, VA regarding Notice of Appeals Council, remanding case back to Adm. Law Judge | .25 hours |

the EAJA.  Because Roberts has lumped two clerical tasks with one non-clerical task and the Court can neither discern the reasonableness of the time spent for each of these entries, nor the hours spent reviewing the documents verses receiving and filing them, the Court will reduce each of these entries by approximately two-thirds.  As such, Roberts will be awarded 2.50 hours for these entries.

### b.        Receiving and Reviewing/Faxing and Reviewing

Roberts has claimed time ranging from .25 hours to 3.00 for "receiv[ing] and review[ing]" and for "fax[ing]" and review[ing]" documents.  In total, Roberts has billed a total of 13.25 hours for these tasks.  As noted above, although Roberts is entitled to compensation for reviewing various documents, he cannot claim time under the EAJA for receiving and/or faxing those same documents.  The Court will examine each of these entries separately.

On August 2, 2005, Roberts billed 2.00 hours for receiving and reviewing a correspondence from Best Practice Family Health, PLC.  Although Roberts' time sheets indicate that this correspondence was 13 pages in length, the Court finds that 2.00 hours is not a reasonable amount of time to receive and review a 13 page document.  Therefore, the Court will reduce the time spent on the review of the correspondence to .75 hours.

On 11/30/05 and 12/1/05, Roberts billed a total of 1.00 hour for the receipt and review of a medical report from Best Family Practice and a MRI.  Based on his time sheet, the Court cannot ascertain the length or complexity of the these documents.  Therefore, the Court will reduce Counsel's fee request by .50 hours.

On 12/27/05 and 12/28/05, Roberts billed a total of .75 hours for the receipt and review of the Plaintiff's medical records from Dr. William T. Fannin. Roberts indicates in this time entry that these records were 9 pages in length. Due to the general complexity of medical records, the Court will only reduce this amount by .25 hours for the receipt of these records which is not compensable. Therefore, Roberts will be entitled to compensation for .50 hours.

On January 1-3, 2006, Roberts billed 3.00 hours for the receipt and review of medical reports received from Dr. Matthews at the Mountain Comprehensive Care Center. In this entry, Roberts indicates that the reports were 22 pages in length. Because the Court finds that 3.00 hours is an unreasonable amount of time to bill for the review of a 22 page report, the Court will reduce the time to 2.00 hours.

On January 16-17, 2006, Roberts billed 3.00 hours for the review of various medical reports from the Spine and Brain Center. Roberts has not disclosed whether these reports were voluminous or particularly complicated. Therefore, consistent with prior entries, the Court will reduce the amount of time to 2.00 hours.

Roberts billed 1.00 hour on June 1-13, 2006, for the receipt and review of Dr. Askin's medical assessment. Again, the time entry does not reflect the length or complexity of the assessment and, therefore, the Court cannot discern the amount of time that was spent receiving verses reviewing the assessment. Giving Roberts the benefit of the doubt, the Court will reduce this time entry by .25 hours for the receipt of Dr. Askin's assessment.

On July 25, 2006, Roberts billed 1.00 hour for faxing and reviewing a medical assessment from Dr. Fannin. Similar to the prior entry, the Court cannot ascertain the amount of time that

was spent faxing verses reviewing the assessment.  Therefore, the Court will reduce this time entry by .25 hours for faxing this document.

On July 26, 2006, Roberts billed 1.25 hours for the receipt and review of Mr. Adkins's medical records received from Dr. Rapier.  Again, due to the general complexity of medical records, the Court will only reduce the fee request by .25 hours for the receipt of these records.  Thus, Roberts is entitled to compensation for 1.00 hour for the review of these medical records.

Finally, on October 18, 2006, Roberts billed .25 hours for the receipt and review of e-mail information related Adkins' case.  This entry is vague and lacks sufficient detail for the Court to ascertain the amount of time that Roberts spent receiving this information as opposed to reviewing it.  Therefore, the Court will not approve any fee for this entry.

### c.      Preparing and Filing

Roberts has billed 13.48 hours for "prepar[ing] and filing" pleadings and other documents.  As previously noted, while the EAJA allows for compensation for the preparation of these pleadings, that statute prohibits reimbursement for clerical tasks, such as filing these documents. Again, based on the records provided by counsel, the Court cannot ascertain how much time he spent preparing verses filing these pleadings and other documents.  Therefore, the Court will examine each of these entries separately.

On July 29, 2005, Roberts billed 1.00 hour for preparing and filing the Complaint.  The Court will reduce this amount by .25 hours inasmuch the EAJA does not allow compensation for filing this document.

On September 2, 2005, Roberts billed 3.25 hours for preparing and filing a motion to remand. Likewise, on September 9, 2005, he billed another 2.00 hours for preparing, researching and filing the motion to remand. It is unclear why Roberts spent over 5.00 hours on the motion inasmuch as it is only a 1 page document, excluding the signature page, and contains only 1 case citation and 2 HALLEX citations. The motion did not require any extensive research. In fact, the motion to remand simply requests that the Court remand the action to the ALJ for further consideration of a medical report from Dr. Fannin. The September 9, 2005, entry indicates that the motion and attached medical evidence were 11 pages in length. The Court notes, however, that the medical report, which was 9 pages, was the most lengthy portion of the document. Accordingly, the Court will reduce the number of hours claimed for the preparation of the motion to remand to .5 hours.

In the entry labeled September 30, 2005, through October 4, 2005, Roberts billed 2.50 hours for preparing and filing a supplemental motion to remand. Having again examined the motion in the official court record, the Court notes that it is 6 pages in length and has 18 pages of medical records attached to it. While the supplemental motion to remand is longer than the initial motion, the substance is no greater. In fact, the motion contains only 1 case citation and 1 HALLEX citation and merely outlines the medical evidence attached and quotes paasages from the evidence. Because Roberts has billed an excessive amount of time for preparing this motion, the Court will reduce the number of hours claimed to .75 hours.

On January 11, 2007, Roberts billed .75 for preparing and filing a motion to submit a favorable decision. This motion is less than a page in length and contains no legal research.

Therefore, the Court will reduce the number of hours claimed to .25.

Also, on January 11, 2007, Roberts billed 3.98 hours for preparing and filing the EAJA fee petition.  The Court notes that there is a split in the circuits regarding whether EAJA allows attorneys to recover for the reasonable time spent preparing an EAJA fee application.  *See Trichilo v. Sec'y of Health and Human Servs.*, 823 F.2d 702, 707 (2nd Cir. 1987) (allowing EAJA fees for preparation of EAJA fee application); *Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir. 1984) (no EAJA fees for preparation of EAJA fee application).  In *Kelly v. Bowen*, 862 F.2d 1333, 1334 (8th Cir. 1988), the Eighth Circuit held that, "the time spent preparing the EAJA fee application should be compensable under the EAJA because it is 'necessary for the preparation of the party's case.'" *Id.*  Based on this reasoning, the Court will allow Roberts to be paid for the time spent preparing the fee petition but will reduce the 3.98 hours claimed to 3.50 hours inasmuch as Roberts claimed time for filing the petition.

### D.    Client Contact and File Review

Roberts also has billed an excessive number of hours for consultations with his client and for general reviews of the file.  Roberts' time sheets indicate that he either met or spoke on the telephone with Adkins about his claim approximately 33 times from July 2005 to December 2006.  In total, he has billed 24.50 hours for these consultations.  In addition, he has claimed numerous hours (16.25 hours) to conduct several general reviews of the file.[12]  In explaining his

---

[12]

| | | | |
|---|---|---|---|
| 1/28/06 | Review of file and memo | 1.00 hour |
| 1/31/06 | Review of client's Social Security file and follow-up memo | 1.00 hour |
| 2/24/06 | Receipt of document and case update | 1.00 hour |
| 3/1/06 | Review of file and memo to file for action | 1.00 hour |

numerous contacts with Adkins, Roberts states that:

> when the undersigned attorney takes a case, he treats the client like part of his
> family and indeed takes the case to win. Therefore, the undersigned does spend
> a large amount of hours in representing and processing the case to make sure he
> does win the case. The undersigned attorney leaves no stone unturned in making
> sure the case is won.

[Record No. 24, p. 5]

Although it is always necessary to keep in contact with a client, the number of hours

requested by Roberts is unreasonable in light of the straightforward nature of this case. *See e.g.*,

*Oklahoma Aerotronics, Inc. v. United States*, 943 F.2d 1344 (D.C. Cir. 1991) (noting that "there

is a point at which thorough and diligent litigation efforts become overkill"). This social security

case did not involve particularly difficult or complex issues. Rather, it involved a routine

evaluation of the medical evidence and the severity of the Plaintiff's impairments. In fact, most

the issues before this Court were uncontested. In particular, when Roberts sought remand of this

action for further evaluation of Adkins' medical evidence, the Commissioner agreed to such

action. Further, the Commissioner did not oppose the Court entering final judgment upon

---

| 4/21/06 | Review of Claimant's medical and memo to file | 1.50 hours |
| 6/6/06 | Review of file with follow-up memo | 1.00 hour |
| 6/18/06 | Review of Claimant's Social Security case | 3.00 hours |
| 7/12/06 | Review of Claimant's Social Security file with follow-up | 1.00 hour |
| 7/23/06 | Review of Claimant's file | 3.00 hours |
| 9/11/06 | Review of Claimant's file | 1.50 hours |
| 11/7/06 | Review of Claimant's case and status update | .25 hours |
| 12/22/06 | Review of case file with follow-up | 1.00 hour |

receiving a favorable decision on remand.  While the Court does not intend to unduly

diminishing the value of Roberts' efforts in this litigation, it does note that he was not required

to spend a substantial number of hours addressing complex issues or writing lengthy briefs in

order to obtain a favorable result after remand.

Although the Court finds that Roberts has billed an excessive number of hours for client

meetings and telephone calls and general reviews of the file, the Court will allow him to be

compensated for approximately one-half of the time requested (20 hours).[13]

### C.    Expenses

Roberts has also requested $910.00 in expenses for (1) payment to Dr. William Fannin

($400.00); and (2) payment to Dr. Joseph H. Rapier ($510.00).  The Commissioner has objected

to payment of these expenses, arguing that Roberts has failed to prove that the payments to Drs.

Fannin and Rapier were reasonable or were necessary for the preparation of the Plaintiff's case.

The EAJA provides for "fees and expenses" which include "the reasonable expenses of

expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project

which is found by the court to be necessary for the preparation of the party's case . . ." 28 U.S.C.

§ 2412(d)(2)(A).  Roberts claims that he obtained updated reports from Drs. Fannin and Rapier

because they were necessary "to assure that Mr. Adkins' case would be presented in a positive

fashion to the Administrative Law Judge." [Record No. 24, p. 6]  Specifically, Roberts states that

Dr. Fannin's initial report was not "specific enough and[] did not give great detail of the

---

[13]  The Court has allowed compensation for client consultations and telephone calls and general file review
to the extent they were not duplicative, as discussed in the previous section.

Claimant's medical condition." [Record No. 24, p. 6]  Similarly, he states that he sent the Plaintiff to Dr. Rapier for a "more in-depth report." [Record No. 24, p. 7]

It is unclear from Roberts' representations whether these updated, more-detailed reports were necessary for preparation of the Plaintiff's case.  Although the Plaintiff, on remand to the ALJ, was successful in receiving benefits, the Court cannot discern whether these reports were necessary.  Further, the Commissioner states that, in order to be entitled to reimbursement for a consultative examination, Roberts was required to seek advance approval for this consultation.  Notably, the Plaintiff has not indicated whether he received such approval prior to sending the Plaintiff for these additional examinations.  Therefore, the Court must conclude that the Plaintiff has failed to offer sufficient proof that he is entitled to reimbursement for these expenses.  Accordingly, the Court will deny the request for $910.00 in expenses.

**III.    SUMMARY**

After the deductions described above, Counsel's hours will be reduced as follows:

| Category | | Billed Hours | Adjusted Hours |
|---|---|---|---|
| 1. | Duplicative Tasks[14] | 18.00 | 9.00 |
| 2. | Clerical Tasks | 6.25 | 0 |
| 3. | Multiple Tasks | | |
| a. | Receiving, Reviewing & Filing | 7.75 | 2.50 |
| b. | Receiving/Filing & Reviewing | 13.25 | 8.25 |
| c. | Preparing & Filing | 13.48 | 5.75 |

---

[14]  The totals in this category include the hours billed for drafting letters to request that Mr. Adkins call the office for appointments.

| 4. | Client Contact/File Review | 40.75 | 20.00 |

In addition, the Court notes that Roberts has billed 35.75 hours for other miscellaneous tasks that do not warrant any type of reduction.   Accordingly, Roberts will be awarded compensation for 81.25 hours of work at a rate of $100.00 per hour, or $8,125.00.

Accordingly, it is hereby **ORDERED** that Plaintiff's counsel's motion for attorneys' fees [Record No. 16] is **GRANTED**, in part, and **DENIED**, part.  Plaintiff's counsel is awarded fees of $8,125.00, consistent with this opinion.

This 6th day of April, 2007.

Signed By:

_Danny C. Reeves_  DCR

**United States District Judge**

-27-